John A. Wirthlin
Utah Bar No. 14847
1208 S 1700 E
Salt Lake City, UT 84108
johnwirthlin@gmail.com
T: (813) 777-2570

-and-

Ryan J. McGee (*pro hac vice forthcoming*)
rmcgee@forthepeople.com
John A. Yanchunis (*pro hac vice forthcoming*)
jyanchunis@forthepeople.com
Riya Sharm (*pro hac vice forthcoming*)
rsharma@forthepeople.com
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
T: (813) 223-5505
F: (813) 223-5402

*Attorneys for Plaintiffs and the Class*

## THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **AUDLISHA CLARKSON, SERENA DELAGARZA** and **ALEXANDER LESLIE**, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>**INSTRUCTURE, INC.,**<br><br>    Defendant | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Audlisha Clarkson, Serena Delagarza and Alexander Leslie ("Plaintiffs"),

individually, and on behalf of all others similarly situated, bring this action against Instructure,

1

Inc. ("Defendant").  The following allegations are based on Plaintiffs' knowledge, investigations of counsel, facts of public record, and information and belief.

## NATURE OF THE ACTION

1.     Plaintiffs seek to hold the Defendant responsible for the injuries the Defendant inflicted on Plaintiffs and tens of millions of similarly situated persons ("Class Members") due to the Defendant's impermissibly inadequate and unlawful data security, which caused the personal identifying information ("PII") of Plaintiffs and those similarly situated to be exfiltrated by unauthorized access by cybercriminals (the "Data Breach") on or about May 1, 2026.

2.     Defendant is a leading educational technology company, best known for creating Canvas, the world's number one cloud-based Learning Management System (LMS) for schools, universities, and businesses.[1] Canvas is used by learning institutions, educators, and students to access and manage online course learning materials and communicate about skill development and learning achievement.[2] It is used by 41% of higher education institutions across North America to deliver courses.[3] Millions of K-12 students rely on it as well.[4]

3.     Defendant held itself out as a trusted custodian of student educational records. Its public-facing materials emphasized its compliance with the Family Educational Rights and

---

[1] Company Overview & Key Facts, https://www.instructure.com/about/llm-info (last accessed on May 8, 2025).

[2] What is Canvas?, https://community.instructure.com/en/kb/articles/662716-what-is-canvas (last accessed on May 8, 2025).

[3] Hackers breach Canvas learning platform, exposing data on millions of students and teachers, https://www.wltx.com/article/news/nation-world/canvas-hack-shinyhunters-schools-students-teachers-data-exposed/507-0f3f5973-3d68-45af-b309-666561b2bd87 (last accessed on May 8, 2025).

[4] *Id.*

Privacy Act ("FERPA"), 20 U.S.C. § 1232g, the Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. §§ 6501–6506, and applicable state student privacy laws. Defendant promised, expressly and impliedly, to safeguard the Private Information entrusted to it.

4.     ShinyHunters, the hacking group that claimed responsibility for the Data Breach, said it had accessed data from more than 275 million people across nearly 9,000 schools, according to a ransom letter shared on May 3 by Ransomware.live, which monitors ransomware groups.[5]

5.     The data which the Defendant collected from the Plaintiffs and Class Members, and which was exfiltrated by cybercriminals from the Defendant, were highly sensitive. The exfiltrated data included PII including, but not limited to, names, email addresses, and student ID numbers, as well as messages among users, and other data (approximately 3.65 terabytes) that Defendant collects from students, teachers, and other users of its platform.[6]

6.     Prior to and through the date of the Data Breach, the Defendant obtained Plaintiffs' and Class Members' PII and then maintained that sensitive data in a negligent and/or reckless manner. As evidenced by the Data Breach, the Defendant inadequately and unlawfully maintained its network, platform, software—rendering these easy prey for cybercriminals.

7.     The risk of the Data Breach was known to the Defendant. Recently, other educational platforms have been targets of data breaches, including PowerSchool. And this was not Defendant's first data breach—approximately eight months earlier, the same group ShinyHunters successfully infiltrated and compromised Defendant's Salesforce environment

---

[5] Canvas Online Learning Platform Shut Down for Hours After Cyberattack, https://www.nytimes.com/2026/05/07/education/canvas-hacked-down-data-breach.html

[6] Instructure, https://status.instructure.com/incidents/9wm4knj2r64z (last accessed on May 8, 2025).

through a social-engineering attack. Defendant publicly acknowledged that breach but despite its awareness of past security lapses and the fact that it was, in fact, the target of bad actors, Defendant nevertheless failed to implement security controls sufficient to prevent ShinyHunters from breaching its systems again.

8. Thus, the Defendant was on notice that its inadequate data security created a heightened risk of exfiltration, compromise, and theft.

9. Then, after the Data Breach, Defendant is yet to provide notice to the specific, affected individuals in this case, thereby exacerbating their injuries. Ultimately, Defendant deprived Plaintiffs and Class Members of the chance to take speedy measures to protect themselves and mitigate harm. Simply put, Defendant impermissibly left Plaintiffs and Class Members in the dark—thereby causing their injuries to fester and the damage to spread.

10. Today, the identities of Plaintiffs and Class Members are in jeopardy—all because of Defendant's negligence. Plaintiffs and Class Members now suffer from a present and continuing risk of fraud and identity theft and must now constantly monitor their financial accounts.

11. Armed with the PII stolen in the Data Breach, criminals can commit a boundless litany of financial crimes.

12. Plaintiffs and Class Members will likely suffer additional financial costs for purchasing necessary credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

13. Plaintiffs and Class Members have suffered—and will continue to suffer—from the loss of the benefit of their bargain, unexpected out-of-pocket expenses, lost or diminished value of

their PII, emotional distress, and the value of their time reasonably incurred to mitigate the fallout of the Data Breach.

14.    Through this action, Plaintiffs seek to remedy these injuries on behalf of themselves and all similarly situated individuals whose PII was exfiltrated and compromised in the Data Breach.

15.    Plaintiffs seek remedies including, but not limited to, compensatory damages, treble damages, punitive damages, reimbursement of out-of-pocket costs, and injunctive relief—including improvements to Defendant's data security systems, future annual audits, and the appointment of an independent and qualified cyber auditor to monitor Defendant's cyber hygiene, all of which will be funded by  Defendant.

## PARTIES

16.    Plaintiff Audlisha Clarkson is a natural person and resident and citizen of Tampa, Florida.

17.    Plaintiff Serena Delagarza is a natural person and resident and citizen of San Antonio, Texas.

18.    Plaintiff Alexander is a natural person and resident and citizen of Fair Oaks, California.

19.    Defendant Instructure, Inc. is a company headquartered at 6330 S 3000 E, Suite 700, Salt Lake City, UT 84121, USA.

## JURISDICTION AND VENUE

20.    This Court has original subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a class action involving more than 100 putative class

members and the amount in controversy exceeds $5,000,000, exclusive of interest and costs. Minimal diversity is established because many members of the class are citizens of states different than that of Defendant.

21.     This Court has personal jurisdiction over Defendant, because Defendant maintains its principal place of business in this district.

22.     Venue is proper in this District under 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) because substantial part of the events giving rise to the claims emanated from activities within this District, and Defendant maintains its principal place of business in the jurisdiction.

## FACTUAL ALLEGATIONS

### *Defendant Collected and Stored the PII of Plaintiffs and Class Members*

23.     Defendant is a leading educational technology company, best known for creating Canvas, the world's number one cloud-based Learning Management System (LMS) for schools, universities, and businesses.[7] Canvas is used by learning institutions, educators, and students to access and manage online course learning materials and communicate about skill development and learning achievement.[8] It is used by 41% of higher education institutions across North America to deliver courses.[9] Millions of K-12 students rely on it as well.[10]

---

[7] Company Overview & Key Facts, https://www.instructure.com/about/llm-info (last accessed on May 8, 2025).

[8] What is Canvas?, https://community.instructure.com/en/kb/articles/662716-what-is-canvas (last accessed on May 8, 2025).

[9] Hackers breach Canvas learning platform, exposing data on millions of students and teachers, https://www.wltx.com/article/news/nation-world/canvas-hack-shinyhunters-schools-students-teachers-data-exposed/507-0f3f5973-3d68-45af-b309-666561b2bd87 (last accessed on May 8, 2025).

[10] *Id.*

24.    Defendant received and maintained the PII of its clients', students and teachers, such as individuals' including, but not limited to names, email addresses, student ID numbers, messages among user, passwords, dates of birth, government identifiers, or financial information. These records were, and continue to be, stored on Defendant's computer systems.

25.    Because of the highly sensitive and personal nature of the information Defendant acquires and stores, Defendant knew or reasonably should have known that it stored protected PII and must comply with industry standards related to data security and all federal and state laws protecting customers' PII and provide adequate notice to customers if their PII is disclosed without proper authorization.

26.    When Defendant collects this sensitive information, it promises to use reasonable measures to safeguard the PII from theft and misuse.

27.    By obtaining, collecting, receiving, and/or storing Plaintiffs' and Class Members' PII, Defendant assumed legal and equitable duties and knew, or should have known, that they were thereafter responsible for protecting Plaintiffs' and Class Members' PII from unauthorized disclosure.

28.    Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their PII, including but not limited to, protecting their emails, usernames and passwords, using only strong passwords for their accounts, and refraining from browsing potentially unsafe websites.

29.    Plaintiffs and Class Members relied on Defendant to keep their PII confidential and securely maintained, to use this information for education purposes only, and to make only authorized disclosures of this information.

7

30.    Defendant could have prevented or mitigated the effects of the Data Breach by better securing its network, properly encrypting its data, or better selecting its information technology partners.

31.    Defendant's negligence in safeguarding Plaintiffs' and Class Members' PII was exacerbated by repeated warnings and alerts directed to protecting and securing sensitive data, as evidenced by the trending data breach attacks in recent years.

32.    Despite the prevalence of public announcements of data breaches and data security compromises, Defendant failed to take appropriate steps to protect Plaintiffs' and Class Members' PII from being compromised.

33.    Defendant failed to properly select its information security partners.

34.    Defendant failed to ensure fair, reasonable, or adequate computer systems and data security practices to safeguard the PII of Plaintiffs and Class Members.

35.    Defendant failed to timely and accurately disclose that Plaintiffs' and Class Members' PII had been improperly acquired or accessed.

36.    Upon information and belief, Defendant failed to ensure the proper implementation of sufficient processes to quickly detect and respond to data breaches, security incidents, or intrusions.

37.    Upon information and belief, Defendant failed to ensure the proper encryption of Plaintiffs' and Class Members' PII and monitor user behavior and activity to identify possible threats.

8

*The Data Breach*

38.    Defendant disclosed on May 1, 2026 that it had experienced a "cybersecurity incident perpetrated by a criminal threat actor."[11]

39.    ShinyHunters, a known threat actor, claimed responsibility for the Data Breach, and said it had accessed data from more than 275 million people across nearly 9,000 schools, according to a ransom letter shared on May 3 by Ransomware.live, which monitors ransomware groups.[12]

40.    On May 2, 2026, Defendant posted an update with the PII involved in the Data Breach, thus far:

> We are providing an update on the security incident we advised you of yesterday. While our investigation continues alongside our outside forensics experts, at this stage we believe the incident has been contained.
>
> Here are the steps we have taken since we became aware of the incident. We have:
>
> - Revoked privileged credentials and access tokens associated with affected systems
> - Deployed patches to enhance system security
> - Out of an abundance of caution, we rotated certain keys, even though there is no evidence they were misused
> - Implemented increased monitoring across all platforms
>
> While we continue actively investigating, thus far, indications are that the information involved consists of certain identifying information of users at affected institutions, such as names, email addresses, and student ID numbers, as well as messages among users. At this time, we have found no evidence that passwords,

---

[11] Instructure, https://status.instructure.com/incidents/9wm4knj2r64z (last accessed on May 8, 2025).

[12] Canvas Online Learning Platform Shut Down for Hours After Cyberattack, https://www.nytimes.com/2026/05/07/education/canvas-hacked-down-data-breach.html

dates of birth, government identifiers, or financial information were involved. If that changes, we will notify any impacted institutions.[13]

41.     On May 6, 2026, Defendant posted another update:

Canvas is fully operational, and we are not seeing any ongoing unauthorized activity. As a precaution, we recommend customers follow security best practices, including enforcing MFA on privileged accounts, reviewing admin access, and rotating API tokens or keys where applicable. This will be our final update via this status page for this incident. We will continue to provide updates as appropriate through other channels and are now communicating directly with impacted customers to provide organization-specific information and support.[14]

42.     The update did not promise any assistance on the part of Defendant and the Plaintiffs and Class Members are yet to receive individual notice of the Data Breach.

43.     It is likely the Data Breach was targeted at the Defendant due to its status as a an organization that collects, creates, and maintains PII of students, adults and sensitive groups including minors.

44.     The disclosed, accessed, and/or acquired PII of Plaintiffs and Class Members is likely available on the Dark Web. Hackers can access and then offer for sale the unencrypted, unredacted PII to criminals. Plaintiffs and Class Members are now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from the possible publication of their PII onto the Dark Web. Plaintiffs and Class Members, potentially including many minors, now face a lifetime risk of identity theft, which is heightened here by unauthorized access, disclosure, and/or activity by cybercriminals on computer systems containing sensitive PII.

---

[13] Instructure, https://status.instructure.com/incidents/9wm4knj2r64z (last accessed on May 8, 2025).

[14] *Id.*

45.    In sum, Defendant largely put the burden on Plaintiffs and Class Members to take measures to protect themselves.

46.    Time is a compensable and valuable resource in the United States. According to the U.S. Bureau of Labor Statistics, 55.5% of U.S.-based workers are compensated on an hourly basis, while the other 44.5% are salaried.[15]

47.    According to the U.S. Bureau of Labor Statistics' 2018 American Time Use Survey, American adults have only 36 to 40 hours of "leisure time" outside of work per week;[16] leisure time is defined as time not occupied with work or chores and is "the time equivalent of 'disposable income.'"[17] Usually, this time can be spent at the option and choice of the consumer, however, having been notified of the Data Breach, consumers now have to spend hours of their leisure time self-monitoring their accounts, communicating with financial institutions and government entities, and placing other prophylactic measures in place to attempt to protect themselves.

48.    Plaintiffs and Class Members are now deprived of the choice as to how to spend their valuable free hours and seek renumeration for the loss of valuable time as another element of damages.

---

[15] *Characteristics of minimum wage workers, 2020*, U.S. BUREAU OF LABOR STATISTICS https://www.bls.gov/opub/reports/minimum-wage/2020/home.htm#:~:text=%20In%202020%2C%2073.3%20million%20workers,wage%20of%20%247.25%20per%20hour (last accessed April 25, 2024); *Average Weekly Wage Data*, U.S. BUREAU OF LABOR STATISTICS, *Average Weekly Wage Data,* *https://www.bls.gov/news.release/pdf/wkyeng.pdf* (last accessed April 25, 2024) (finding that on average, private-sector workers make $1,145 per 40-hour work week.).

[16] Cory Stieg, *You're spending your free time wrong — here's what to do to be happier and more successful*, CNBC https://www.cnbc.com/2019/11/06/how-successful-people-spend-leisure-time-james-wallman.html (Nov. 6, 2019) (last accessed April 25, 2024).

[17] *Id.*

49. Upon information and belief, the unauthorized third-party cybercriminals gained access to Plaintiffs' and Class Members' PII with the intent of engaging in misuse of the PII, including marketing and selling Plaintiffs' and Class Members' PII.

50. Defendant has offered no measures to protect Plaintiffs and Class Members from the lifetime risks they each now face. As another element of damages, Plaintiffs and Class Members seek a sum of money sufficient to provide Plaintiffs and Class Members identity theft protection services for a lifetime.

51. Defendant had and continues to have obligations created by reasonable industry standards, common law, state statutory law, and its own assurances and representations to keep Plaintiffs' and Class Members' PII confidential and to protect such PII from unauthorized access.

52. Plaintiffs and the Class Members remain, even today, in the dark regarding the scope of the data breach, what particular data was stolen, beyond several categories listed in the notice posted on the website, while the case is still under active investigation. Plaintiffs and Class Members are left to speculate as to the full impact of the Data Breach and how exactly the Defendant intends to enhance its information security systems and monitoring capabilities so as to prevent further breaches.

***Defendant Failed to Comply with FTC Guidelines***

53. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.[18] To that end, the FTC has issued numerous

---

[18] *Start with Security: A Guide for Business*, FED. TRADE COMM'N (June 2015), https://bit.ly/3uSoYWF (last accessed April 25, 2024).

guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exfiltration of PII.

54. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[19] The guidelines explain that businesses should:

a. protect the personal customer information that they keep;

b. properly dispose of personal information that is no longer needed;

c. encrypt information stored on computer networks;

d. understand their network's vulnerabilities; and

e. implement policies to correct security problems.

55. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

56. The FTC recommends that companies not maintain personal information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[20]

57. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and

---

[19] *Protecting Personal Information: A Guide for Business*, Fed. Trade Comm'n (Oct. 2016), https://bit.ly/3u9mzre (last accessed April 25, 2024).

[20] *See Start With Security, A Guide for Business*, Fed. Trade Commission, https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited March 16, 2024).

appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

58.    Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Failed to Follow Industry Standards***

59.    Despite its alleged commitments to securing sensitive data, Defendant does not follow industry standard practices in securing PII.

60.    Experts studying cyber security routinely identify such providers as being particularly vulnerable to cyberattacks because of the value of the PII which they collect and maintain.

61.    Several best practices have been identified that a minimum should be implemented by companies like Defendant, including but not limited to securely configuring business software, managing access controls and vulnerabilities to networks, systems, and software, maintaining network infrastructure, defending networks, adopting data encryption while data is both in transit and at rest, and securing application software.[21]

62.    Other best practices have been identified that a minimum should be implemented by companies like Defendant, including but not limited to ensuring that PII is only shared with

---

[21] *See* Center for Internet Security, *Critical Security Controls* (May 2021), available at https://learn.cisecurity.org/CIS-Controls-v8-guide-pdf (last visited Jan. 17, 2024).

third parties when reasonably necessary and that those vendors have appropriate cybersecurity systems and protocols in place.[22]

63.    Defendant failed to follow these and other industry standards to adequately protect the PII of Plaintiffs and Class Members.

***Plaintiff Audlisha Clarkson's Experience with the Data Breach***

64.    Plaintiff Audlisha Clarkson provided her PII to Defendant and upon information and belief, that PII was stored and maintained by Defendant.

65.    Plaintiff values her privacy and makes every effort to keep her PII private.

66.    Since the Data Breach, Plaintiff believes she may have fraudulent activity on her credit report. She was told that her credit report was leaked.

67.    Plaintiff is now forced to live with the anxiety that her PII is being disclosed to the entire world, thereby subjecting Plaintiff to embarrassment and depriving her of any right to privacy whatsoever.

68.    Because of the Data Breach, Defendant inflicted injuries upon Plaintiff and Class Members. And yet, Defendant has done little to provide Plaintiff and the Class Members with relief for the damages they suffered.

69.    All Class Members were injured when Defendant caused their PII to be exfiltrated by cybercriminals.

70.    Plaintiff and Class Members entrusted their PII to Defendant. Thus, Plaintiff had the reasonable expectation and understanding that Defendant would take—*at minimum*—industry standard precautions to protect, maintain, and safeguard that information from unauthorized users

---

[22] *See id.*

or disclosure, and would timely notify them of any data security incidents. Plaintiff and Class Members would not have entrusted their PII to Defendant had they known that Defendant would not take reasonable steps to safeguard their information.

71.    Plaintiff and Class Members suffered actual injury from having their PII compromised in the Data Breach including, but not limited to, (a) damage to and diminution in the value of their PII—a form of property that Defendant obtained from Plaintiff; (b) violation of their privacy rights; (c) the likely theft of their PII; (d) fraudulent activity resulting from the Data Breach; and (e) present and continuing injury arising from the increased risk of additional identity theft and fraud.

72.    As a result of the Data Breach, Plaintiff and Class Members also suffered emotional distress because of the release of their PII—which they believed would be protected from unauthorized access and disclosure. Now, Plaintiff and Class Members suffer from anxiety about unauthorized parties viewing, selling, and/or using their PII for nefarious purposes like identity theft and fraud.

73.    Because of the Data Breach, Plaintiff remains at a substantial and imminent risk of future harm given the highly-sensitive nature of the information stolen. Plaintiff faces a substantial risk of out-of-pocket fraud losses, such as loans opened in her name, medical services billed in her name, tax return fraud, utility bills opened in her name, credit card fraud, and similar identity theft.

74.    Plaintiff and Class Members have spent—and will continue to spend—considerable time and money to try to mitigate and address harms caused by the Data Breach.

*Plaintiff Serena Delagarza's Experience with the Data Breach*

75.    Plaintiff Serena Delagarza provided her PII to Defendant and upon information and belief, that PII was stored and maintained by Defendant.

76.    Plaintiff values her privacy and makes every effort to keep her PII private.

77.    Plaintiff is now forced to live with the anxiety that her PII is being disclosed to the entire world, thereby subjecting Plaintiff to embarrassment and depriving her of any right to privacy whatsoever.

78.    Because of the Data Breach, Defendant inflicted injuries upon Plaintiff and Class Members. And yet, Defendant has done little to provide Plaintiff and the Class Members with relief for the damages they suffered.

79.    All Class Members were injured when Defendant caused their PII to be exfiltrated by cybercriminals.

80.    Plaintiff and Class Members entrusted their PII to Defendant. Thus, Plaintiff had the reasonable expectation and understanding that Defendant would take—*at minimum*—industry standard precautions to protect, maintain, and safeguard that information from unauthorized users or disclosure, and would timely notify them of any data security incidents. Plaintiff and Class Members would not have entrusted their PII to Defendant had they known that Defendant would not take reasonable steps to safeguard their information.

81.    Plaintiff and Class Members suffered actual injury from having their PII compromised in the Data Breach including, but not limited to, (a) damage to and diminution in the value of their PII—a form of property that Defendant obtained from Plaintiff; (b) violation of their privacy rights; (c) the likely theft of their PII; (d) fraudulent activity resulting from the Data

Breach; and (e) present and continuing injury arising from the increased risk of additional identity theft and fraud.

82.     As a result of the Data Breach, Plaintiff and Class Members also suffered emotional distress because of the release of their PII—which they believed would be protected from unauthorized access and disclosure. Now, Plaintiff and Class Members suffer from anxiety about unauthorized parties viewing, selling, and/or using their PII for nefarious purposes like identity theft and fraud.

83.     Because of the Data Breach, Plaintiff remains at a substantial and imminent risk of future harm given the highly-sensitive nature of the information stolen. Plaintiff faces a substantial risk of out-of-pocket fraud losses, such as loans opened in her name, medical services billed in her name, tax return fraud, utility bills opened in her name, credit card fraud, and similar identity theft.

84.     Plaintiff and Class Members have spent—and will continue to spend—considerable time and money to try to mitigate and address harms caused by the Data Breach.

### Plaintiff Alexander Leslie's Experience with the Data Breach

85.     Plaintiff Alexander Leslie provided his PII to Defendant and upon information and belief, that PII was stored and maintained by Defendant.

86.     Plaintiff values his privacy and makes every effort to keep his PII private.

87.     Plaintiff is now forced to live with the anxiety that his PII is being disclosed to the entire world, thereby subjecting Plaintiff to embarrassment and depriving him of any right to privacy whatsoever.

88.     Because of the Data Breach, Defendant inflicted injuries upon Plaintiff and Class Members. And yet, Defendant has done little to provide Plaintiff and the Class Members with relief for the damages they suffered.

89.     All Class Members were injured when Defendant caused their PII to be exfiltrated by cybercriminals.

90.     Plaintiff and Class Members entrusted their PII to Defendant. Thus, Plaintiff had the reasonable expectation and understanding that Defendant would take—*at minimum*—industry standard precautions to protect, maintain, and safeguard that information from unauthorized users or disclosure, and would timely notify them of any data security incidents. Plaintiff and Class Members would not have entrusted their PII to Defendant had they known that Defendant would not take reasonable steps to safeguard their information.

91.     Plaintiff and Class Members suffered actual injury from having their PII compromised in the Data Breach including, but not limited to, (a) damage to and diminution in the value of their PII—a form of property that Defendant obtained from Plaintiff; (b) violation of their privacy rights; (c) the likely theft of their PII; (d) fraudulent activity resulting from the Data Breach; and (e) present and continuing injury arising from the increased risk of additional identity theft and fraud.

92.     As a result of the Data Breach, Plaintiff and Class Members also suffered emotional distress because of the release of their PII—which they believed would be protected from unauthorized access and disclosure. Now, Plaintiff and Class Members suffer from anxiety about unauthorized parties viewing, selling, and/or using their PII for nefarious purposes like identity theft and fraud.

19

93.     Because of the Data Breach, Plaintiff remains at a substantial and imminent risk of future harm given the highly-sensitive nature of the information stolen. Plaintiff faces a substantial risk of out-of-pocket fraud losses, such as loans opened in his name, medical services billed in his name, tax return fraud, utility bills opened in his name, credit card fraud, and similar identity theft.

94.     Plaintiff and Class Members have spent—and will continue to spend—considerable time and money to try to mitigate and address harms caused by the Data Breach.

***Plaintiffs and the Proposed Class Face Significant Risk of Present and Continuing Identity Theft***

95.     Plaintiffs and Class Members suffered injury from the misuse of their PII that can be directly traced to Defendant.

96.     The ramifications of Defendant's failure to keep Plaintiffs' and the Class's PII secure are severe. Identity theft occurs when someone uses another's PII such as that person's name, email ID, account number, Social Security number, driver's license number, date of birth, and/or other information, without permission, to commit fraud or other crimes.

97.     According to experts, one out of four data breach notification recipients become a victim of identity fraud.[23]

98.     As a result of Defendant's failures to prevent—and to timely detect—the Data Breach, Plaintiffs and Class Members suffered and will continue to suffer damages, including

---

[23]Anne Saita, "Study Shows One in Four Who Receive Data Breach Letter Become Fraud Victims", Threat Post, (Feb. 20, 2013) https://threatpost.com/study-shows-one-four-who-receive-data-breach-letter-become-fraud-victims-022013/77549/ (last visited on May 14, 2024).

monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a.      The loss of the opportunity to control how their PII is used;

b.      The diminution in value of their PII;

c.      The compromise and continuing publication of their PII;

d.      Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e.      Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f.      Delay in receipt of tax refund monies;

g.      Unauthorized use of stolen PII; and

h.      The continued risk to their PII, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII in their possession.

99.     Stolen personal information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen personal information can be worth up to $1,000.00 depending on the type of information obtained.[24]

---

[24] Brian Stack, "Here's How Much Your Personal Information Is Selling for on the Dark Web," EXPERIAN (Dec. 6, 2017) https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited on May 14, 2024).

100.   The value of Plaintiffs' and the proposed Class's PII on the black market is considerable. Stolen Personal Information trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

101.   It can take victims years to spot or identify PII theft, giving criminals plenty of time to milk that information for cash.

102.   One such example of criminals using PII for profit is the development of "Fullz" packages.[25]

103.   Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

104.   The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiffs' and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain

---

[25] "Fullz" is fraudster-speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money can be made off those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record or more on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz", which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See, e.g.*, Brian Krebs, "Medical Records For Sale in Underground Stolen From Texas Life Insurance Firm," KREBS ON SECURITY, (Sep. 18, 2014) https://krebsonsecurity.com/tag/fullz/ (last visited on May 14, 2024).

information such as emails, phone numbers, or credit card numbers may not be included in the personal information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiffs and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiffs' and other members of the proposed Class's stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

105.    According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that year, resulting in more than $3.5 billion in losses to individuals and business victims.

106.    Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good." Defendant has still individually not reported to Plaintiffs and the Class that their PII had been stolen.

107.    Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

108.    In addition to out-of-pocket expenses that can exceed thousands of dollars and the emotional toll identity theft can take, some victims have to spend a considerable time repairing the damage caused by the theft of their PII. Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continuously monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

109.    Further complicating the issues faced by victims of identity theft, data thieves may wait years before attempting to use the stolen PII. To protect themselves, Plaintiffs and the Class will need to remain vigilant against unauthorized data use for years or even decades to come.

110.    The FTC has also recognized that consumer data is a new and valuable form of currency. In an FTC roundtable presentation, former Commissioner Pamela Jones Harbour stated that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency."[26]

## CLASS ACTION ALLEGATIONS

111.    Plaintiffs brings this action individually and on behalf of all other persons similarly situated ("the Class") under Fed. R. Civ. P. 23(b)(2), 23(b)(3), and 23(c)(4).

112.    Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> All persons residing in the United States whose PII was accessed by unauthorized individuals in the Data Breach at Instructure, Inc. which was reported on or about May 1, 2026.

113.    The Class defined above is readily ascertainable from information in Defendant's possession. Thus, such identification of Class Members will be reliable and administratively feasible.

114.    Excluded from the Class are: (1) any judge or magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors,

---

[26] "Commissioner Pamela Jones Harbour: Remarks Before FTC Exploring Privacy Roundtable," FED. TRADE COMMISSION (Dec. 7, 2009), https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf (last visited on May 14, 2024).

24

predecessors, affiliated entities, and any entity in which Defendant or its parent has a controlling interest, and these entities' current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; (6) members of the jury; and (7) the legal representatives, successors, and assigns of any such excluded persons.

115. Plaintiffs reserve the right to amend or modify the Class definition—including potential Subclasses—as this case progresses.

116. Plaintiffs and Class Members satisfy the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

117. **Numerosity**. The Class Members are numerous such that joinder is impracticable. While the exact number of Class Members is unknown to Plaintiffs at this time, based on information and belief, the Class consists of tens of millions of individuals who reside in the U.S. and were or are students or teachers affiliated with the Defendant's clients, and whose PII was compromised by the Data Breach.

118. **Commonality**. There are many questions of law and fact common to the Class. And these common questions predominate over any individualized questions of individual Class Members. These common questions of law and fact include, without limitation:

a. Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiffs' and Class Members' PII;

b.     Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.     Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d.     Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

e.     Whether Defendant owed a duty to Class Members to safeguard their PII;

f.     Whether Defendant breached its duty to Class Members to safeguard their PII;

g.     Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

h.     Whether Defendant should have discovered the Data Breach earlier;

i.     Whether Defendant took reasonable measures to determine the extent of the Data Breach after it was discovered;

j.     Whether Defendant's delay in informing Plaintiffs and Class Members of the Data Breach was unreasonable;

k.     Whether Defendant's method of informing Plaintiffs and Class Members of the Data Breach was unreasonable;

l.     Whether Defendant's conduct was negligent;

m.     Whether Plaintiffs and Class Members were injured as a proximate cause or result of the Data Breach;

26

n.  Whether Plaintiffs and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

o.  Whether Defendant breached implied contracts with Plaintiffs and Class Members;

p.  Whether Defendant was unjustly enriched by unlawfully retaining a benefit conferred upon them by Plaintiffs and Class Members;

q.  Whether Defendant failed to provide notice of the Data Breach in a timely manner, and;

r.  Whether Plaintiffs and Class Members are entitled to damages, civil penalties, punitive damages, treble damages, and/or injunctive relief.

119.  **Typicality**. Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' information, like that of every other Class Member, was compromised in the Data Breach. Moreover, Plaintiffs and Class Members were subjected to Defendant's uniformly illegal and impermissible conduct.

120.  **Adequacy of Representation**. Plaintiffs will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiffs' Counsel are competent and experienced in litigating complex class actions. Plaintiffs have no interests that conflict with, or are antagonistic to, those of the Class.

121.  **Predominance**. Defendant has engaged in a common course of conduct toward Plaintiffs and Class Members, in that all the Plaintiffs and Class Members' data was stored on the same network system and unlawfully and inadequately protected in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over

27

any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

122.    **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources, the parties' resources, and protects the rights of each Class Member.

123.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

124.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

125.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include those set forth above.

126.    Defendant has acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

**FIRST CAUSE OF ACTION**
**Negligence**
**(On Behalf of Plaintiffs and the Class)**

127.    Plaintiff re-alleges and incorporates by reference paragraphs 1 to 126 of the Complaint as if fully set forth herein.

128.    Defendant required required Plaintiffs and Class Members to provide Defendant with PII to receive Defendant's products and services.

129.    By collecting and storing this data in its computer system and network, and sharing it and using it for commercial gain, Defendant owed a duty of care to use reasonable means to secure and safeguard its computer system—and Plaintiffs' and Class Members' PII held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes so it could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

130.    The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable to Defendant. Given that Defendant holds vast amounts of PII, it was inevitable that unauthorized individuals would at some point try to access Defendant's databases of PII.

131.    After all, PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiffs and Class Members.

Thus, Defendant knew, or should have known, the importance of exercising reasonable care in handling the PII entrusted to them.

132.   Defendant owed a duty of care to Plaintiffs and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its, or its service providers', systems and networks, and the personnel responsible for them, adequately protected the PII.

133.   Defendant's duty of care to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiffs and Class Members, which is recognized by laws and regulations, as well as common law. Defendant was in a superior position to ensure that its own, and its service providers' systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

134.   Defendant failed to take appropriate measures to protect the PII of Plaintiffs and the Class. Defendant is morally culpable, given the prominence of security breaches in the education industry. Any purported safeguards that Defendant had in place were wholly inadequate.

135.   Defendant breached its duty to exercise reasonable care in safeguarding and protecting Plaintiffs' and the Class members' PII by failing to adopt, implement, and maintain adequate security measures to safeguard that information, despite known data breaches in this industry, and allowing unauthorized access to Plaintiffs' and the other Class Members' PII.

136.   The Defendant was negligent in failing to comply with industry and federal regulations in respect of safeguarding and protecting Plaintiffs' and Class Members' PII.

137.   But for Defendant's wrongful and negligent breach of its duties to Plaintiffs and the Class, Plaintiffs' and Class Members' PII would not have been compromised, stolen, and

30

viewed by unauthorized persons. Defendant's negligence was a direct and legal cause of the theft of the PII of Plaintiffs and the Class and all resulting damages.

138.    Defendant owed Plaintiffs and Class Members a duty to notify them within a reasonable time frame of any breach to its PII. Defendant also owed a duty to timely and accurately disclose to Plaintiffs and Class Members the scope, nature, and occurrence of the Data Breach. This duty is necessary for Plaintiffs and Class Members to take appropriate measures to protect its PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps in an effort to mitigate the fallout of the Data Breach.

139.    Defendant owed these duties to Plaintiffs and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals who Defendant knew or should have known would suffer injury-in-fact from its inadequate security protocols. After all, Defendant actively sought and obtained the PII of Plaintiffs and Class Members.

140.    Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Plaintiffs' and Class Members' PII.  The specific negligent acts and omissions committed by Defendant include, but are not limited to:

    a.    Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII;

    b.    Failing to comply with—and thus violating—FTCA, and the applicable regulations;

    c.    Failing to adequately monitor the security of its networks and systems;

    d.    Failing to have in place mitigation policies and procedures;

    e.    Allowing unauthorized access to Class Members' PII;

31

f.    Failing to detect in a timely manner that Class Members' PII had been compromised; and

141.    It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' PII would result in injury to Class Members. Furthermore, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the educational service industry, owing to the collection of vast amounts of PII. It was therefore foreseeable that the failure to adequately safeguard Class Members' PII would result in one or more types of injuries to Class Members.

142.    The injury and harm suffered by Plaintiffs and Class Members was the reasonably foreseeable result of Defendant's failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and the other Class Members' PII. Defendant knew or should have known that its systems and technologies for processing and securing the PII of Plaintiffs and the Class had security vulnerabilities.

143.    As a result of Defendant's negligence, the PII and other sensitive information of Plaintiffs and Class Members was compromised, placing them at a greater risk of identity theft and their PII being disclosed to third parties without the consent of Plaintiffs and the Class Members.

144.    Simply put, Defendant's negligence actually and proximately caused Plaintiffs and Class Members actual, tangible, injuries-in-fact and damages. These injuries include, but are not limited to, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the

32

effects of the Data Breach that resulted from and were caused by Defendant's negligence. Moreover, injuries-in-fact and damages are ongoing, present and continuing.

145.    Plaintiffs and Class Members are entitled to compensatory and consequential damages suffered because of the Data Breach.

146.    Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.,* (1) strengthen its data security systems and monitoring procedures; (2) submit to future annual audits of those systems and monitoring procedures; and (3) continue to provide adequate credit monitoring to all Class Members for a period of life.

## SECOND CAUSE OF ACTION
### Negligence *Per Se*
### (On Behalf of Plaintiffs and the Class)

147.    Plaintiff re-alleges and incorporates by reference paragraphs 1 to 126 of the Complaint as if fully set forth herein.

148.    Under the Federal Trade Commission Act, Defendant had a duty to employ reasonable security measures. Specifically, this statute prohibits "unfair . . . practices in or affecting commerce," including (as interpreted and enforced by the FTC) the unfair practice of failing to use reasonable measures to protect confidential data.[27]

149.    Defendant breached its duties, pursuant to the FTCA and other applicable standards, and thus was negligent, by failing to use reasonable measures to protect Plaintiffs' and Class Members' PII. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following: (i) failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII; (ii) failing to adequately monitor the security of their

---

[27] 15 U.S.C. § 45.

networks and systems; (iii) allowing unauthorized access to Class Members' PII; (iv) failing to detect in a timely manner that Class Members' PII had been compromised; and (v) failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

150.    Defendant's violation of Section 5 of the FTCA (and similar state statutes) constitutes negligence per se.

151.    Plaintiffs and Class Members are consumers within the class of persons that Section 5 of the FTCA were intended to protect.

152.    The harm that has occurred is the type of harm the FTCA were intended to guard against.

153.    The FTC has pursued enforcement actions against businesses that, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class.

154.    Defendant breached its duties to Plaintiffs and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Private Information.

155.    Plaintiffs and Class Members were foreseeable victims of Defendant's violations of the FTCA. Defendant knew or should have known that its failure to implement reasonable data security measures to protect and safeguard Plaintiffs' and Class Members' PII would cause damage to Plaintiffs and the Class.

156.    As a direct and proximate result of Defendant's negligence per se, Plaintiffs and the Class have suffered and will suffer injury, including but not limited to: (i) the actual misuse of

34

their compromised PII; (ii) invasion of privacy; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) an increase in spam calls, texts, and/or emails; and (vii) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

157.    As a direct and proximate result of Defendant's negligence per se, Plaintiffs and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

158.    Finally, as a direct and proximate result of Defendant's negligence per se, Plaintiffs and the Class have suffered and will suffer the continued risks of exposure of their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant  fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

<u>**THIRD CAUSE OF ACTION**</u>
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Class)**

159.    Plaintiffs re-allege and incorporates by reference paragraphs 1 to 126 of the Complaint as if fully set forth herein.

160.    Plaintiffs and Class Members conferred a benefit upon Defendant by directly or indirectly providing Defendant with their PII.

161.    Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiffs. Defendant also benefited from the receipt of Plaintiffs' and Class Members' Private Information.

162.    Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiffs' and the Class Members' PII because Defendant failed to adequately protect their PII. Plaintiffs and Class Members would not have directly or indirectly provided their PII to Defendant had they known Defendant would not adequately protect their PII.

163.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiffs and Class Members all unlawful or inequitable proceeds received by it because of its misconduct and the Data Breach it caused.

## FOURTH CAUSE OF ACTION
### Declaratory Judgment
### (On Behalf of Plaintiffs and the Class)

164.    Plaintiffs re-allege and incorporates by reference paragraphs 1 to 126 of the Complaint as if fully set forth herein

165.    Pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57, an actual controversy has arisen between Plaintiffs and Class Members on the one hand, and Defendant on the other, concerning Defendant's legal obligations with respect to the PII in its custody.

166.    Plaintiffs seek a declaration that: (a) Defendant's data security practices were and are inadequate; (b) Defendant owes a continuing duty to Plaintiffs and Class Members to implement and maintain reasonable data security; and (c) Defendant must provide individualized notice and long-term credit and identity monitoring to Plaintiffs and Class Members.

36

167. Plaintiffs further seek injunctive relief requiring Defendant to: (a) implement and maintain reasonable data security practices, including those specified above; (b) submit to ongoing third-party security audits; (c) provide credit and identity monitoring services for the Nationwide Class for a period to be determined; (d) provide individualized notice to all affected Class Members in plain language; and (e) such other equitable relief as the Court deems just.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, individually and on behalf of all others similarly situated, requests the following relief:

A. An Order certifying this action as a class action and appointing Plaintiffs as Class representatives, and the undersigned as Class Counsel;

B. A mandatory injunction directing Defendant to adequately safeguard the PII of Plaintiffs and the Class hereinafter by implementing improved security procedures and measures, including but not limited to an Order:

i. Prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii. Requiring Defendant to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

iii. Requiring Defendant to delete and purge the PII of Plaintiffs and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiffs and Class Members;

37

iv. Requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Plaintiffs' and Class Members' PII;

v. Requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis;

vi. Prohibiting Defendant from maintaining Plaintiffs' and Class Members' PII on a cloud-based database until proper safeguards and processes are implemented;

vii. Requiring Defendant to segment data by creating firewalls and access controls so that, if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

viii. Requiring Defendant to conduct regular database scanning and securing checks;

ix. Requiring Defendant to monitor ingress and egress of all network traffic;

x. Requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling PII, as well as protecting the PII of Plaintiffs and Class Members;

xi. Requiring Defendant to implement a system of tests to assess its employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting

personal identifying information;

xii.    Requiring Defendant to implement, maintain, review, and revise as necessary a threat management program to appropriately monitor Defendant's networks for internal and external threats, and assess whether monitoring tools are properly configured, tested, and updated;

xiii.    Appointing an independent and qualified cyber auditor to monitor Defendant's cyber hygiene, to be funded by Defendant; and

xiv.    Requiring Defendant to meaningfully educate all Class Members about the threats that they face because of the loss of its confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves.

C.    A mandatory injunction requiring that Defendant provide notice to each member of the Class relating to the full nature and extent of the Data Breach and the disclosure of PII to unauthorized persons;

D.    A mandatory injunction requiring Defendant to purchase credit monitoring and identity theft protection services for each Class Member for life;

E.    An injunction enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen PII;

F.    An award of damages, including actual, nominal, consequential damages, and punitive, as allowed by law in an amount to be determined;

G.    An award of attorneys' fees, costs, and litigation expenses, as allowed by law;

39

H.      An award of pre- and post-judgment interest, costs, attorneys' fees, expenses, and interest as permitted by law;

I.      Granting the Plaintiffs and the Class leave to amend this Complaint to conform to the evidence produced at trial;

J.      For all other Orders, findings, and determinations identified and sought in this Complaint; and

K.      Such other and further relief as this court may deem just and proper.

## JURY TRIAL DEMANDED

Under Federal Rule of Civil Procedure 38(b), Plaintiffs demands a trial by jury for any and all issues in this action so triable as of right.

Dated: May 9, 2026                                     Respectfully Submitted,

*/s/ John A. Wirthlin*
John A. Wirthlin
Utah Bar No. 14847
1208 S 1700 E
Salt Lake City, UT  84108
johnwirthlin@gmail.com
T: (813) 777-2570

-and-

Ryan J. McGee (*pro hac vice forthcoming*)
rmcgee@forthepeople.com
John A. Yanchunis (*pro hac vice forthcoming*)
jyanchunis@forthepeople.com
Riya Sharm (*pro hac vice forthcoming*)
rsharma@forthepeople.com
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
T: (813) 223-5505
F: (813) 223-5402

*Attorneys for Plaintiffs and the Class*